B. & J. Monroe for plaintiff; Kavanaugh for defendant.

---

## Mercer vs. Tinsley.

### ERROR TO CALDWELL CIRCUIT.

1. Upon the sale of the equity of redemption of a mortgagor in slaves, the purchaser is entitled to the possession, and so is one to whom he may sell, though the sheriff may have failed to take the bond required by the 36th section of the statute, 1 *Stat. Law,* 653. If the mortgagor hire the slave of the purchaser after sale, and then refuse to give possession, he is liable to the purchaser or his vendee for the value of the equity of redemption in the slave.

2. The bond required by the statute to be taken by an officer selling the equity of redemption in mortgaged property is for the benefit of mortgagee, and not the mortgagor.

3. A sheriff may lawfully take personal property, mortgaged and levied upon, into his possession to sell the equity of redemption, and a purchaser obtaining the possession from the sheriff has the right to hold it against the mortgagee until a sale ordered.

4. A mortgagee holding the legal title, if his debt be due and unpaid, cannot be divested of his possession of the mortgaged property by the mortgagor or any person holding under him, by private purchase or execution sale.

5. If both mortgagor and mortgagee consent, in writing, to the sale of property under execution, the title of both will pass to the purchaser.

Chief Justice Hise delivered the opinion of the court.

William Mercer had executed deeds of mortgage to Gray and to Flournoy, conveying to Gray two, and to Flournoy one, of the slaves in contest, for the purpose

of securing the debts and liabilities existing in favor of, and incurred by the mortgagees. The slaves continued and were permitted to remain in the possession of Mercer. Richard Cruse, a judgment creditor of Mercer's, at a regular execution sale, through his agent, James Cruse, purchased Mercer's equity of redemption in two of the slaves which had been mortgaged to Gray, or in other words, bought the two slaves subject to Gray's mortgage, which was forfeited at the time, and thereupon Mercer hired the slaves from the purchasers, and executed and delivered to the agent of Richard Cruse his written obligation to pay hire, to treat the slaves with humanity, and to deliver them to said Cruse or his agent at the end of the periods for which they were repeatedly hired. Mercer continued to hire the slaves from Richard Cruse until the 1st of October, 1849, at which time he had bound himself to surrender the possession to Cruse or his agent. After this period they were not again hired to Mercer, but Cruse, by his agent, as is assumed from the whole evidence in the case, sold the slaves to William D. Tinsley, the plaintiff in this action. The only question presented in the record which deserves to be considered, is whether Tinsley, the vendee of Cruse, has a right to recover the slaves from Mercer, who had failed and refused to deliver them up according to his contract with Cruse.

Held, that in such case the mortgagor, whose equity of redemption in the mortgaged property has been sold under execution, and holding the slaves under the purchaser, and his term having expired as above stated, is under obligations to deliver, and cannot lawfully withhold the possession of them from the purchaser or his vendee, although the sheriff, who made the sale may have neglected and failed to take the bond as required by the 36th section of the general execution law, (1st *Statute Law*, 653,) and if such mortgagor withholds the possession of the slaves they or the value of the equity of redemption may be recovered by suit from the mortgagor who has thus

1. Upon the sale of the equity of redemption of a mortgagor in slaves, the purchaser is entitled to the possession, and so is one to whom he may sell, though the sheriff may have failed to take the bond required by the 36th section of the Statutes, 1 *Stat. Law*,

consented to hold the slaves under the purchaser as bailee for hire.

The statute requires the bond, to have the slaves forthcoming, to be executed for the benefit of the mortgagee, to preserve his security, and not at all for the benefit of the mortgagor, who, after the sale of his equity of redemption, would have no interest whatever to secure, as the legal title would be in the mortgagee, and the right of the mortgagor to redeem would, by the execution sale, vest in the purchaser, from whom or his vendee the mortgagor then would have no lawful right to withhold the possession, though the bond referred to be not executed, provided, as in this case, the mortgagor undertakes to hold the slaves as the bailee of the purchaser, and binds himself to pay hire and return the slaves to the purchaser.

The sheriff can take the property mortgaged into his possession, by virtue of his authority to sell the mortgagor's interest under execution, and if he should deliver the possession to the purchaser he would have a right to hold such possession as against the mortgagor, as the bailee of Cruse, and to deliver them to him, and he therefore cannot shelter himself under the title of the mortgagees of whose *entire interest* in the property he has become the owner, although the purchaser may have failed to deliver or the sheriff to take the bond as required by the statute, for the security of the mortgagee, and not that of mortgagor; but in such case it is not decided that the sheriff would be authorized to deliver the possession, or that the purchaser would have the right to demand or recover it. The right in this case is predicated upon the ground that Mercer is bound by his own contract. The case of *Swigert, &c. v. Thomas, 7th Dana*, 224, has been cited as authority against the plaintiff's right of recovery, but that case has no application at all to the one in question: there the purchaser of the equity sought a recovery of damages in an action of trespass against the mortga-

<div style="margin">

MERCER
*vs.*
TINSLEY.

653. If the mortgagor hire the slave of the purchaser after sale, and then refuse to give possession, he is liable to the purchaser or his vendee for the value of the equity of redemption in the slave.

2. The bond required by the statute to be taken by an officer selling the equity of redemption in mortgaged property is for the benefit of mortgagee, and not the mortgagor.

3. A sheriff may lawfully take personal property mortgaged and levied upon, into his possession to sell the equity of redemption, and a purchaser obtaining the possession from the sheriff has the right to hold it against the mortgagee until a sale ordered.

</div>

MERCER
vs.
TINSLEY.

gees' authorized agents, for taking possession of the property, and withholding it from the plaintiff; here the plaintiff, the owner of the equity, seeks a recovery, not from the mortgagees who hold the legal title or their agents, but from the mortgagor whose entire right and interest has passed to the plaintiff under a valid execution sale, and who is estopped, though the mortgagee is not, from denying the right of the plaintiff to compel him to surrender the possession of the property to him, or to pay to him the value of the interest in the property if the property be not delivered. The right of the plaintiff in such case does not at all conflict with the superior legal right of the mortgagees to have possession, if required, of the mortgaged property, to be applied to the payment of their demands whether such possession be withheld by the mortgagor himself or the execution purchaser of his equitable interest in the said property. The purchaser may recover the property from the mortgagor if the possession is withheld by him in a case like this; but not from the mortgagee himself, who has the legal title, if he holds the possession untill his debt be paid.

4. A mortgagee holding the legal title, if his debt be due and unpaid, cannot be divested of his possession of the mortgaged property by the mortgagor or any person holding under him, by private purchase or execution sale.

The mortgagee holding the legal title, if his debt be due and unpaid, would of course have a right to recover possession of the mortgaged property from the mortgagor himself, and from any person holding under him, by private purchase or an execution sale.

5. If both mortgagor and mortgagee consent, in writing, to the sale of property under execution, the title of both will pass to the purchaser.

With respect to the slave that was mortgaged to Flournoy, no such question can arise, as both the mortgagor and mortgagee consented and agreed in writing to the sale under execution when Richard Cruse purchased.

It is urged by the plaintiff in error that the court below erred in refusing him a new trial, because it was not proved that James W. Cruse sold the slaves to the plaintiff as agent and by authority from Richard Cruse; but the jury doubtless understood, as they well might, that the evidence of James W. Cruse es-

tablished the fact that he was the *general agent* of his father, Richard Cruse, who was a non-resident, and that he, the agent, meant to state and did in substance indicate by his proof, that he sold the slaves as agent, and had authority to do so ; no doubt was entertained on this point, and no question made upon it in the instructions or otherwise in the court below, and doubtless this fact was not controverted but conceded as being well known to the parties, and as having been clearly indicated in the statements of the witness.

The instructions asked by defendant were properly rejected by the court, as having no just and legal application to the facts of the case; and those given at the request of the plaintiff's attorney, if erroneous, could not have prejudiced the defendant, and were less favorable than they might have been to plaintiff.

From the view thus taken of the law governing this case, it follows, that the record of the judicial proceedings instituted by Gray's assignee to foreclose Gray's mortgage, which included a number of other slaves besides those in contest, was properly rejected when offered as evidence, because the fact that Gray held the legal title to the two slaves did not authorize Mercer to withhold them from Richard Cruse or his vendee, and was therefore not material, and not admissable proof in the cause.

The judgment is affirmed.

MOREHEAD & BROWN for plaintiff; HARLAN for defendant.